**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MAMADOU BA,

              Petitioner,              Case No. 25-14093

v.                                   Hon. Jonathan J.C. Grey

KEVIN RAYCRAFT, *et al.*,

              Respondents.

_____/

**OPINION AND ORDER GRANTING
PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1)**

## I.    INTRODUCTION

Before the Court is Petitioner Mamadou Ba's petition for writ of

habeas corpus ("petition"), filed pursuant to 28 U.S.C. § 2241, alleging he

is being unlawfully detained at Monroe County Jail in violation of the

Immigration and Nationality Act ("INA") and the Due Process Clause of

the Fifth Amendment. (ECF No. 1.) Immigration removal proceedings are

currently pending against Ba.

For the reasons below, this Court finds that Ba's detention

pursuant to 8 U.S.C. § 1225(b)(2)(A) and without a bond hearing under 8

U.S.C. § 1226(a) violates his due process rights and **ORDERS** he be

immediately released, or in the alternative, be given an individualized bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge ("IJ") **on or before March 12, 2026.** Accordingly, Ba's petition (ECF No. 1) is **GRANTED**.

## II.    BACKGROUND

Ba is a citizen of Senegal and arrived in the United States on November 5, 2023. (ECF No. 1, PageID.9.) He alleges that he has no criminal record in the United States or elsewhere, and he poses no danger to the community or flight risk. (*Id.*)

On July 8, 2025, United States Immigration and Customs Enforcement ("ICE"), in coordination with the United States Department of Justice, announced a new governmental policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." (*Id.*, PageID.7.) This policy "claims that all persons who entered the United States without inspection are subject to mandatory detention without bond under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended." (*Id.*)

On October 1, 2025, Ba was arrested by immigration officers. (*Id.*, PageID.9.) He is presently in Monroe County Jail. (*Id.*) Ba is charged with

2

having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*)

During Ba's administrative immigration proceedings, he was deemed removable. According to the government (but not mentioned or addressed by Ba in any of his briefing), Ba allegedly applied for asylum pursuant to a Form I-589 application. (ECF No. 5, PageID.45 (citing ECF No. 5-3).). On February 3, 2026, an immigration judge issued an order that: (1) granted the government's motion to pretermit the Form I-589 application; (2) pretermitted and denied the Form I-589 application; (3) ordered Ba removed to Uganda; and (4) vacated a hearing set for February 12, 2026. (ECF No. 5-3, PageID.73.)

On December 18, 2025, Ba filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, alleging violations of the INA and the Fifth Amendment Due Process Clause, among other alleged violations of federal law. (ECF No. 1.) Ba asserts that, having been charged with entering the United States without inspection and pursuant to 8 U.S.C. § 1226(a), he is entitled to a bond determination. (*Id.*, PageID.11.)

Respondents argue that Ba's detention is lawful under the INA. Specifically, they assert that Ba is properly detained pursuant to §

3

1225(b)(2), a mandatory detention provision, and not § 1226(a), a discretionary detention framework, so his detention does not violate his due process rights. (ECF No. 5.)

## III.   LEGAL STANDARD

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting 28 U.S.C. § 2241(c)(3)). Two sections of the INA principally govern detention of noncitizens pending removal proceedings. *See* 8 U.S.C. §§ 1225, 1226.

Section 1225 is a *mandatory* detention provision that states, in relevant part:

> **(2)   INSPECTION OF OTHER ALIENS**
> **(A)  In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted"

4

are defined as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226 instead provides for a *discretionary* detention framework. It states, in relevant part:

> **(a) ARREST, DETENTION, AND RELEASE**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)  may continue to detain the arrested alien; and
>
> (2)  may release the alien on—
>
> > (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a). Section 1226(c), however, provides for mandatory detention of certain inadmissible or deportable noncitizens who have been charged with, arrested for, convicted of, or admit having committed specific listed crimes.[1] Unlike noncitizens detained under § 1225, and those who are excepted under § 1226(c), "noncitizens arrested and detained under Section 1226 have a right to request a custody

---

[1] This section was added by Congress in January 2025 with the passing of the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025).

redetermination (i.e. [sic] a bond hearing) before an Immigration Judge." *Lopez-Campos*, 797 F. Supp. 3d at 777 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)).

## IV.   ANALYSIS

### A.   Proper Respondent

Ba filed this petition against ICE Detroit Field Office Director Kevin Raycraft ("Raycraft"), Secretary of the United States Department of Homeland Security Kristi Noem ("Noem"), and the United States Department of Homeland Security ("DHS").

Respondents argue that the only proper respondent to this action is the warden of the Monroe County Jail, but Ba did not sue that warden.[2] (ECF No. 5, PageID.47.) Respondents rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 435–442 (2004) for the proposition that the warden, who is the "immediate *physical* custodian, as opposed to someone who exercises *constructive legal* custody over the petitioner" is the "proper respondent."

---

[2] Alternatively, Respondents assert that Raycraft is the "only proper respondent" "if the Court applies the legal control test (which it should not because that test is inconsistent with *Padilla*)[.]" (ECF No. 5, PageID.47.)

*Aguilar v. Dunbar*, No. 2:25-cv-12831, 2025 WL 3281540, at \*\*2–3 (E.D. Mich. Nov. 13, 2025) (emphasis in original) (citing *Padilla*, 542 U.S. at 438–440).

Recently, a court in the Eastern District of Michigan considered this argument, which was raised by the government in a similar habeas petition, and found that, based on *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), Raycraft was, in fact, properly named as a respondent. *See Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286, at \*3, \*5 (E.D. Mich. Nov. 21, 2025).

This Court agrees with the reasoning in *Romero Garcia*:

In *Roman*, the Sixth Circuit held that the INS District Director[3] for the district where a detention facility is located is the proper respondent for a petitioner facing removal proceedings, because the District Director has power over that petitioner. 340 F.3d at 320. In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. at 435. However, while setting a general rule, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by [a noncitizen] detained pending deportation." *Padilla*, 542 U.S. at 435 n.8. Courts in this district and circuit

---

[3] "INS' 'District Directors' are the same as today's ICE Field Office Directors." *Romero Garcia*, 2025 WL 3252286, at \*2 n.2 (citing *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006)).

7

> have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla.*

*Romero Garcia*, 2025 WL 3252286, at \*2. Just as in *Romero Garcia*, this Court finds that Ba is currently in removal proceedings and that Raycraft, who controls the release of Ba, is properly named a respondent.

Thus, the Court finds that Raycraft is a properly named respondent in this action and **DISMISSES** all other respondents.

## B.   Statutory Interpretation

The central question of this habeas petition is whether the mandatory detention framework under §1225(b)(2)(A) or the discretionary detention framework under § 1226 applies to Ba. Ba maintains that the government's reliance on § 1225(b)(2)(A) to mandate his detention "contradicts the statutory text, structure, and history of the INA," as § 1226 encompasses people like Ba who have been residing in the interior of the country for years. (ECF No. 1, PageID.11, 12, 14.) Ba argues that the specific text of § 1225(b)(2)(A) further demonstrates that it does not apply to someone like Ba since he is not an "applicant for admission" who is "seeking admission" before an "examining immigration officer." Respondents counter that Ba is properly detained under §

8

1225(b)(2) because he meets every element in the text of the statute; and even if the text were ambiguous, the structure and history of the statute support the agency's interpretation. (ECF No. 5, PageID.47.)

Having reviewed many of these cases, this Court is particularly persuaded by the reasoning in two opinions: *Lopez-Campos*, 797 F. Supp. 3d 771; and *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). For the reasons stated below, the Court finds that Ba should be considered detained under § 1226(a) and is thus entitled to a bond hearing.

### i.  *Interpretation of the Plain Text*

The Court begins its review on the merits by examining the plain text of the relevant statutory provisions. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation omitted) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word of the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning

only in context.'" *Kentucky*, 23 F.4th at 603 (citations omitted). "Barring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Bautista*, 2025 WL 3713987, at *9.  (citation omitted). Applying these canons here, the Court finds that Ba is unlawfully detained under § 1225(b)(2)(A), though he could properly be detained under § 1226(a).

As the court in *Bautista* reasoned, the INA's definition section "readily resolves" the parties' dispute over statutory interpretation and supports Ba's reading of the statute. *Id.* Section 1225(b)(2)(A) applies to a noncitizen who is "an applicant for admission," which § 1225(a)(1) defines, in relevant part, as a noncitizen "present in the United States who has not been admitted[.]" Section 1101(a)(13)(A) of the INA's definition section provides that "admitted" means "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." Thus, applicants for admission are noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer.*" *See* § 1101(a)(13)(A) (emphasis added); § 1225(a)(1).

Critically, applying the INA's definition of "admitted" to § 1225(b)(2)(A) unambiguously requires applicants for admission to have

undergone inspection and authorization by an immigration officer. This is further supported by the title of § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See Dubin v. United States*, 599 U.S. 110, 120–121 (2023) (internal quotation marks and citations omitted) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). The respondents' definition, which includes all unadmitted noncitizens present in the United States regardless of their proximity to the border and the length of time they have been present in the United States (ECF No. 5, PageID.48), is clearly incompatible with the definition set forth in § 1225(b)(2)(A). To adopt respondents' definition, the Court would have to entirely ignore the INA's definition section—specifically, § 1101(a)(13)(A)—which is contrary to what statutory interpretation dictates. Indeed, as respondents state, "'[w]hen a statute includes an explicit definition, [courts] must follow that definition,' even if it varies from a term's ordinary meaning." (ECF No. 5, PageID.48 (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)).) Respondents,

11

however, ignore the INA's *explicit* definition of "admitted." The Court cannot do the same.

Importantly, respondents also ignore several words in § 1225(b)(2)(A). *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (citation omitted) ("'[E]very clause and word of a statute should have meaning.'"). Section 1225(b)(2)(A) states, "[i]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As courts in this district and other districts have already explained, "seeking" "implies action." *See, e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 781; *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (finding that "seeking" suggests action).

Respondents' interpretation is that any noncitizen present in the United States unlawfully, who does not agree to immediately depart, is automatically and perpetually "seeking admission." (*See* ECF No. 5, PageID.50–51.) That reading is far too broad, as evidenced by even

12

respondents' own example. Respondents contend that "[i]n removal proceedings, if an unlawfully admitted noncitizen does not accept removal, he can seek a lawful admission . . . For instance, petitioner cannot plausibly challenge his inadmissibility, but he may apply to cancel his removal and adjust his status[.]" (*Id.*, PageID.78–79.) Indeed, in this example, the noncitizen had to *apply* for cancellation of removal—in other words, he had to actively seek some kind of immigration relief to be considered "seeking admission."[4] This implies, if not concedes, that the noncitizen was not seeking admission when he was detained.

Ba does not satisfy the elements of § 1225(b)(2)(A). At the time of apprehension, Ba was not presenting himself for admission at or near the border, nor was he applying for any kind of immigration relief that could possibly render him a noncitizen "seeking admission" by respondents' reading.[5] Moreover, Ba was never seen by an "examining immigration

---

[4] Ba's alleged asylum application  does not change this Court's analysis. *See Santos Franco v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *7 (E.D. Mich. Oct. 21, 2025) ("And even if Respondent argues that [the petitioner] is 'seeking admission' because he applied for asylum ... that was not done when he was 'arriving' to [the United States]. So the applicability of § 1225(b)(2)(A) would still be incorrect."); *Pacheco-Acosta v. Olson*, No. CV 25-186-DLB, 2025 WL 3542128, at *5 (E.D. Ky. Dec. 10, 2025) (collecting cases).

[5] As another court aptly found:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a

officer," nor does it appear that he received a determination that he was "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Ba notes that "immigration officer" is defined in the statute's implementing regulations as "the following employees of the *Department of Homeland Security*[.]" 8 C.F.R. § 1.2 (emphasis added). The definition does not encompass immigration judges, who are employees of the Department of Justice. *Id.* Thus, as correctly asserted by Ba, "even if [he] was somehow an 'applicant for admission' who is also 'seeking Admission' into the United States, [Ba] still would not fall within §1225(b)(2)(A) because his removal proceedings are before an immigration judge, not an immigration officer." (ECF No. 2, PageID.46.)

---

movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

14

On the other hand, Ba's circumstances fall squarely within § 1226(a), which is similarly unambiguous. Looking to the plain language of § 1226, which deals with the "apprehension and detention" of noncitizens, it provides that, upon "a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision applies because of Ba's removal proceedings before the immigration court. Therefore, the Attorney General "may continue to detain [him]" and "may release [him]" on bond. *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody determination or redetermination (i.e., bond hearing) before an IJ. *Id.*; *see also* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

The Supreme Court's interpretation of when these two statutory provisions apply supports this Court's interpretation. In *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), the Supreme Court noted that noncitizens covered by § 1225(b)(1) are those subject to expedited removal, which Respondents concede does not apply to Ba. (ECF No. 5, PageID.52 ("petitioner is not in expedited removal").) Then, the Supreme

15

Court explained that § 1225(b)(2) "serves as a catchall provision that applies to all *applicants for admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added).

Moreover, in a separate section of the opinion, the Supreme Court recognized that "*[e]ven once inside the United States*, [noncitizens] do not have an absolute right to remain here . . . Section 1226 generally governs the process of arresting and detaining that group of [noncitizens] pending their removal." *Id.* at 288. The Supreme Court concluded,

> In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289 (emphasis added). The Supreme Court thus clearly envisioned that § 1225(b)(2) and § 1226 exist in harmony and apply to different groups of noncitizens. Indeed, in its analysis, the Supreme Court did not conflate "applicants for admission" with noncitizens already inside the United States more generally.

Respondents admit that *Jennings* characterized § 1226 as applying to noncitizens present in the United States but then argue that the Supreme Court "made it clear that this category of noncitizens only

16

included those that were admitted" because the Supreme Court cited §
1227(a), which only applies to noncitizens in and admitted to the United
States. (ECF No. 5, PageID.59.) Respondents' reading of *Jennings* is
remarkably selective. Read in its proper context, the Supreme Court cited
§ 1227(a) as only an "example" of noncitizens who are present in the
United States but who may still be detained under § 1226(a) pending
their removal. *Jennings*, 583 U.S. at 288.

For the reasons stated above, under the plain language of §
1225(b)(2)(A), "applicants for admission" do not include noncitizens
already in the United States who, like Ba, were not seeking admission
and were not determined inadmissible by an examining immigration
officer. Instead, under its plain language, § 1226(a) governs Ba's
detention.

### ii.  Interpretation of the Statutory Framework

As the court in *Bautista* found, Ba's and this Court's interpretation
of these statutory provisions is the only interpretation that "produces a
substantive effect that is compatible with the rest of the law." *United Sav.
Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365,
371 (1988) (citations omitted). "The words of a statute must be read in

17

their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012) (internal quotation marks and citation omitted). "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Respondents' interpretation of the INA would render § 1226(c) superfluous. Section 1226(a) states that noncitizens detained via a warrant while facing removal proceedings may be released on bond or parole "[e]xcept as provided in subsection (c)." *See* 8 U.S.C. § 1226(a). In other words, § 1226(c) exempts certain noncitizens from § 1226(a)'s discretionary detention scheme by virtue of those noncitizens' criminal histories. Notably, § 1226(c)(1)(E) authorizes the Attorney General to mandatorily detain noncitizens: (1) who are inadmissible under § 1182(a)(6)(A)—the same ground of inadmissibility with which Ba has been charged; **and** (2) whose criminal history meets the criteria outlined in § 1226(c)(1)(E)(ii).[6] To accept respondents' reading—that §

_____

[6] The Court also notes that the explicit mention in § 1226 of the same ground of inadmissibility with which Ba has been charged—i.e., § 1182(a)(6)(A)—undercuts

18

1225(b)(2)(A) subjects every noncitizen who did not lawfully enter the country to mandatory detention—"would strip [§] 1226(c) of meaning," *Monge-Nunez*, 2025 WL 3565348, at \*6, which the canons of statutory interpretation do not allow. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (citation omitted) (rejecting an interpretation of a statute that "render[s] an entire subparagraph meaningless").

It is also worth noting that Congress only recently added § 1226(c)(1)(E) through the enactment of the Laken Riley Act. *See* Pub. L. No. 119-1, 139 Stat 3 (Jan. 29, 2025). "[W]hen Congress acts to amend a statute, we presume it intends its amendments to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at

---

respondents' argument that "there is no 'positive repugnancy' between § 1225(b)(2) and § 1226(a)" and that § 1226(a) only "reaches noncitizens that are not covered by § 1225(b)(2)." (ECF No. 5, PageID.56–57.)

19

784 (internal quotation marks omitted) (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, at \*12 (D. Minn. Aug. 15, 2025)).

Beyond just rendering § 1226(c) superfluous, respondents' position "cannot be harmonized with other portions of the INA." *Bautista*, 2025 WL 3713987, at \*11 (citation omitted). "If the Court were to accept [r]espondents' position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were 'applicants for admission,' then there would be no possible set of noncitizens to which § 1226(a) would apply." *Id.* The Court cannot construe § 1225(b)(2) in such a way that would make other sections of the INA "inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314 (citation omitted).

"Where statutory language is unambiguous and 'the statutory scheme is coherent and consistent,' the Court must end its inquiry." <u>Bautista</u>, 2025 WL 3713987, at \*12 (citation omitted). Because the Court finds the statutory provisions to be unambiguous and consistent with Ba's interpretation, the Court does not undertake consideration of other canons of construction, legislative history and intent, or agency practice.

Accordingly, given the plain text of the statutory provisions, the broader context of the statute, and the INA's recent amendment with the Laken Riley Act, the Court finds that § 1226(a)'s detention framework governs Ba's detention, and he is entitled to a bond hearing.

### C.    Due Process

The Fifth Amendment to the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

Respondents contend that Ba does not present a plausible due process claim. Respondents state that "[Ba] was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has the right to request bond and appeal any bond decision by the immigration court, and he has been detained by ICE for less than six months." (ECF No. 5, PageID.65)

Had the Court agreed that § 1225(b)(2), as opposed to § 1226(a), applies to Ba, respondents' argument may have merit. But the Court does

21

not agree. As discussed above, § 1226(a) governs Ba's detention. Accordingly, he is entitled to the process outlined in § 1226(a)—a bond hearing at which the IJ must make an individualized custody determination. No such hearing has been held. "Therefore, without first evaluating [Ba's] risk of flight or dangerousness, his detention is a violation of his due process rights." *Lopez-Campos*, 797 F. Supp. 3d at 785.

Further, "[t]he Sixth Circuit has also applied the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement." *Id.* Under the *Mathews* test, this Court must consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards;" and (3) "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors favor Ba. First, Ba's liberty is at stake. Second, the absence of a bond hearing inherently creates a high "risk of

erroneous deprivation" of his liberty right. Third, respondents have not shown, and likely cannot show, that they have a significant interest in Ba's continued detention. Accordingly, any interest respondents might have in fewer bond hearings does not outweigh Ba's liberty interest or the risk of erroneous deprivation.

Thus, the Court agrees that Ba's mandatory detention pursuant to § 1225(b)(2) violates his due process rights.

### D.    Other Claims

Ba also filed claims for violation of bond regulations (count II), violation of the Administrative Procedure Act ("APA") and the INA for arbitrary, capricious, and ultra vires agency action (count III), and violation of the Suspension Clause of the U.S. Constitution (U.S. CONST. art. I, § 9, cl. 2) (count IV). As the Court has determined that Ba's petition for writ of habeas corpus should be granted based on a violation of the INA and his due process rights, the Court does not reach these claims at this time.

## V.    CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Ba's petition for writ of habeas corpus (ECF No. 1) is **GRANTED.**

23

**IT IS FURTHER ORDERED** that Respondents Noem and DHS are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Respondent Raycraft is enjoined from detaining Ba based on 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that respondents shall immediately release Ba, or in the alternative, provide him with an individualized bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge, **on or before March 12, 2026.**

**IT IS FURTHER ORDERED** that respondents shall file a status report with this Court **on or before March 19, 2026** to certify compliance with this order. The status report shall include whether and when Ba was released from detention or provided with a bond hearing under 8 U.S.C. § 1226(a). If the bond hearing under 8 U.S.C. § 1226(a) did occur, the status report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**SO ORDERED.**

Date: March 5, 2026                              **s/Jonathan J.C. Grey**
                                                 Jonathan J.C. Grey
                                                 United States District Judge

24

25

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 5, 2026.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager

25